Case numbers 20-43-42, 21-30-17, and 21-32-82. Weatherford US LP et al. v. US Department of Labor Administrative Review Board. Oral argument not to exceed 10 minutes per party. Mr. Slazek, you may proceed for the petitioner. Good morning. May it please the Court, my name is Donald Slazek and I'm here representing the appellant Weatherford International. Thank you for providing the appellant with the opportunity to present this argument. I have reserved three minutes for rebuttal. This matter involves three appeals, two of which involve Weatherford. The first appeal dealt with the merits of the Administrative Law Judge's decision. The second appeal dealt with the Administrative Review Board's decision on attorney's fees. I will address those two appeals during this. The main issue here is whether Ayer submitted a workplace complaint during his employment with Weatherford that alleged that and if so, whether Weatherford's decision to include Ayers in the reduction in force was legitimate. The facts in here are undisputed and straightforward. Ayers did not submit a complaint that his discharge was legitimate. Weatherford hired over 100 equipment operators in Williston, North Dakota in 2012 with the hope that there would be high demand for fracking. Unfortunately, demand was very low. It overhired equipment operators. It had to make the difficult decision to conduct a reduction in force. The decision to conduct a reduction in force was based purely on performance issues. We had much testimony developed during the administrative proceeding that Mr. Ayers was among one of the lowest performers in the equipment operator position. In fact, he got into an altercation on his last day on site in Williston, North Dakota. Despite all of that, I understand that those are the facts of this case, but despite all of that, the ALJ and the ARB ruled against you. So now what do we do with that? They made findings of fact that are adverse to you? Yes, Your Honor, and that gets to our appeal as we believe, yes, ALJ and ARB went through those issues, but also this matter involves a district court case that was first filed by Mr. Ayers in the Northern District of Ohio that involved the same allegations and the same claims. His Northern District case involved an Ohio whistleblower retaliation that also involved allegations that he brought forth a complaint to Weatherford about alleged Department of Transportation violations, and it was because of that. But that wasn't decided on in there, that particular whistleblower? The whistleblower claim was not, Your Honor, but the United States District Court said it was dismissed because it was in the wrong jurisdiction. He could have filed it in North Dakota. He chose not to. He chose to instead. Yes, so you can't have preclusion from a claim not decided on the merits? Well, in res judicata, I believe you can, Your Honor. Did you raise res judicata below? We did. We raised res judicata and collateral estapo both with the Administrative Review Board, Your Honor. Where in the record do you raise res judicata? Res judicata is in our reply brief with the Administrative Review Board. Yes, so the reply brief at the last stage of the briefing in the agency, is that sufficient to preserve your claim preclusion argument? I believe it does, Your Honor, and also if there's any... Wait, why? Because they never got a chance to respond to that. The ALJ didn't get to consider it, and your opponent never got a chance to respond to it because you raised it in your reply brief in the appeal. We would never consider such a claim. Well, Your Honor, while we did raise it in the reply brief, the Sixth Circuit does have the authority to consider arguments that weren't, for lack of, for sake of argument, raised during the administrative process, and it would be unfairness, and whether the issue is so clear that there leaves no doubt that it would be barred by res judicata. You had a hearing before the ARB? We did. Was res judicata argued at that hearing? I believe collateral estapo was, Your Honor. Okay, so there was no argument, actually, either, not an oral argument, so it just seems like it's too late. I mean, we can't just hear it for the first time in our court. You should have raised it below. Thank you, Your Honor, but also the issue of collateral estapo also, we believe, applies, and that's issue preclusion. There's no dispute that the district court did reach a final decision on the merits as to Weatherford's reduction in force. Finding it legitimate and not finding it related to any alleged protected activity. Specifically looking at the FLSA, not the STAA, right? Yes, it was in relation to the FLSA claim, but we believe that the finding is, nonetheless, that should preclude the issue. I mean, it found the reduction in force legitimate as a matter of law. So although it was an FLSA claim and the Administrative Review Board and the Administrative Law Judge dealt with an STAA claim, it's still, there's no facts and no differential as to why it would be legitimate for one and not the other. I mean, the district court considered all the facts and circumstances. It found that many employees were included in the reduction in force. They were all discharged at the same time. But the standards are completely different when you look at the FLSA as opposed to the STAA, where, you know, there's a burden clear and convincing evidence, at least as it relates to your rebuttal position. So doesn't that standard change the issue preclusion analysis? I don't think it does, Your Honor. I think in both instances, Weatherford's required to say, hey, we had a reduction in force. It was legitimate. It was not discriminatory. And in both matters, both the FLSA and the STAA, pretext is considered, animus is considered, and other factors surrounding the issues are considered. And the district court did consider those facts. It found that Weatherford did include at least two employees who did submit complaints regarding their employment, one of which was very similar to the claims that issued that they were not included in the reduction in force, and that many employees who did not submit workplace complaints were also included in the reduction in force. So the district court did consider those issues and found it dispositive as to whether or not that reduction in force was legitimate. On the mayor, is it your position that Mr. Harris didn't engage in protected activity? No. Well, one, we do concede that he did bring forth one workplace complaint early on in his employment. He does not raise issues with that complaint in this, in this appeal. What's at issue in this appeal is whether or not he brought forth complaints of Department of Transportation violations. We don't, we do not, our position is that he did not raise such complaints during his employment. Isn't the fact that he refused to drive outside of his certification when he was asked by a supervisor to do so, isn't that engaging in protected activity? We don't believe the record supports that, Your Honor. He, Mr. Ayers had very few driving assignments in Williston. I mean, the fact of the matter is there was almost no work they were looking for work to do. I believe Mr. Ayers had nine hours total of driving time on maybe four or five days. He, through his testimony, he said none of those days that are documented I would have covered. His supervisor, Mr. Hammonds, stated that he asked Mr. Ayers to drive outside of his certification and Mr. Ayers said no. Well, even if he did, Your Honor, and I apologize if he did and my testimony is a little off, it wouldn't be protected activity. He would then have to complain. So just asking him to drive outside of your CDL, if I say, hey, can you do this assignment, and he says no, it's outside of my CDL, that wouldn't be protected activity. He would then have to say, well, you know, he would have to go to HR or a manager and say, hey, I raised an issue about going outside of my CDL and Mr. Hammonds said I had to do it or I felt threatened or my job was placed on the line for it. So just merely asking him to do it and him refusing without any repercussion and not raising issues as to that would not be protected activity. Okay. I think your time is up. So you do have your rebuttal time. Thank you. Thank you, Your Honor. Thank you. Good morning. I'm Attorney Martin Hume. I am here for the intervener and the, I guess it would be a cross-appellant petitioner. The estate of Daniel Ayers, Kim Ayers is the executor of his estate. I'd like to reserve two minutes of my time for rebuttal. Very well. I want to thank the court for the honor of having the opportunity to address you this morning. I believe that it's an important case and my client wanted to be here this morning, but unfortunately she couldn't make it. So she is actually listening. I don't know if we have audio or video, but she's listening this morning. So I wanted to start by talking about the sort of overarching issues in this case and the impact that your decision will make. Before we get to the specific issues, I'm sure you're going to want to hear about waiver, estoppel, acquiescence, Air 21 standards. I'd like to address the broader implications of what your decision is going to impact it's going to have. The reason that Ms. Ayers can't be here today, she sent me a text message saying that because she has to work and she would have to take time off from work and she can't afford to do that, she's not here today. She's in that situation, number one, because of the untimely death of her husband, which is unfortunate. Obviously Weatherford is not responsible for that. His death was not related to this case. But it's also because of the impact of what Weatherford did to her husband prior to the time that he passed away. He was discharged by Weatherford for engaging in protected conduct under the STAA. And as a result of that, he lost his income, lost his ability to assist his family. And the administrative law judge heard all the evidence, made a factual determination that he was discharged in violation of the STAA, ordered compensatory and punitive damages. And if this court upholds that decision, it will impact and have a broad effect, a life-changing decision on behalf of my client. Well, let's look at the other side of that coin. What if the court reverses the decision, holds Weatherford is not responsible for its actions in this case? Well, if you do that, Weatherford will not be held accountable for discharging an employee for engaging in protected conduct under the STAA. Weatherford will not be sanctioned for failing to investigate his safety-related complaints. Weatherford would not be sanctioned for having a supervisor threaten expressly to fire any employee that complained about safety violations to HR, their human resources department. It would have a negative impact in the enforcement of the STAA if this court reverses the decision by the ARB and the ALJ. Could you address the denial of punitive damages to your client? What's your argument for why you should be entitled to punitive damages? There's one overriding principle that I think applies not just to that argument but to all the arguments in this case. And that is that this court should impose the STAA in the manner which Congress intended. And in this case, in 2007, prior to 2007, there were no punitive damages in the STAA. In 2007, Congress amended the STAA to specifically include punitive damages as an additional remedy. And they had a statement in the congressional record explaining why they did that. And they said it was for the purpose of making available punitive damages as a remedial mechanism designed to encourage whistleblowing and protect employees from retaliation. But the language they used didn't say anything about an estate being able to recover. Right. I agree. And that gets us to the issue of the application of the federal law regarding... There are federal statutes that do explicitly reference an estate being able to recover. Is that correct? I'll be honest. I don't know of them specifically, Your Honor. But I can tell you that state law, for example, Ohio and North Dakota law, both allowed recovery of punitive damages. I think because I believe that in this case, federal law is silent. Yeah, I mean, it seems like there's a longstanding common law rule, federal common law rule, that the presumption is that if the statute doesn't explicitly reference an estate being able to recover punitive damages, that the default rule is that they aren't allowed to recover. I disagree, Your Honor, respectfully. In this circuit, we have these two cases, the Murphy case and the Parchman case. And they set forth a decision-making framework for deciding whether or not a potential cause of action survives. And the essence of the argument that I'm making is that this court should not be dividing one cause of action into its remedial and its punitive aspects. You have to make a determination whether the STA as a whole is a remedial statute. Why would that be? Why wouldn't the question be whether one particular kind of damages is penal or remedial? Because if you look at the Parchman and the Murphy cases closely, Your Honor, what you're going to see is they set up a decision-making framework. The first thing you look at is the recovery in favor of the individual or the state. Very clearly, in this case, it's in favor of the individual, not the state. Then you have to look at whether or not the punitive damages are proportionate to the damages that were incurred. In this case, there was a $25,000 punitive damage award, a little bit about approximately 10% of the compensatory damages award. Very clearly, it's proportionate. If you simply look at the Murphy-Parchman decision-making scheme, apply the facts of this case to that, you're going to find that the Sixth Circuit case law suggests that that cause of action survives. The other two that we're relying on, there was the Truth in Lending Act and I believe it was the Fair Debt Collection Act. Those also allowed, they even called it civil penalties. They used the word penalty. But despite the use of the word penalty, exemplary damages, they found in those cases, those claims for exemplary or punitive damages survived. In the Murphy case, it was a question of bankruptcy proceeding. But in the Parchman case, it was expressly the death of a claimant prior to the resolution of the case. And I do want to argue just a little bit about the policy reasons why this should be dealt with. This case originated in 2012 when Mr. Ayers was fired. Counsel, what cases do you have where punitive damages were awarded, where that was found to be remedial as opposed to penal? Specifically, the two Sixth Circuit cases that I've cited, it's Murphy v. Household Finance and Parchman. It's in my brief. I'm not sure what the... Those didn't address punitive damage. Those addressed statutory penalties. Isn't that right? Well, civil penalty I don't think is specifically any different than a punitive damages. In other words, the way I understand the scheme or the framework, is the punitive damage remedy, okay, which is included in the STAA, is that part of a remedial statutory scheme, okay? And if your answer to that question is yes, then you look at whether or not... But if we conceived of that, I mean, if we have a federal statute that just mimics the elements of a tort statute, right, the underlying tort claim is always going to be remedial, right, because you're trying to restore the plaintiff, you know, give him his damages, restore him to the position he was in before, compensate him for the harm, and then you tack something else on, punitive damages. So I think if we go with your argument, the answer will be punitive damages are always available. Now, maybe that's your answer. No, it is not, Your Honor. I mean, you actually... I do make that argument as a sub-argument, okay, as an alternative method of deciding, basically relying on a Illinois case where they say if there is a statutory claim for punitive damages, it survives the death of a plaintiff. I think that actually is a fair rule. It's easy to apply and one you should consider applying. But based on the existing Sixth Circuit case law, you have to go through the Murphy-Parkman analysis structure. And you're just saying that balance comes out your way in this case. Exactly correct. And part of the reason it comes out my way is because we have remedial statute, okay. Look at the equities of the situation, either side of the other parties. I think you've briefed that to our satisfaction. Okay. Thank you very much, Mr. Chairman. Appreciate it, Your Honor. Thank you very much for your time and attention. And do we have argument from the Department of Labor? Good morning, Your Honors, and may it please the Court. Linda Wiles for the Department of Labor. I would like to focus my presentation on two main points today. First, the merits of Ehr's Stahl claim are clearly supported by the record in this case. And second, this Court should reject Weatherford's collateral estoppel and raised judicata arguments. So you're not here to discuss the punitive damages issue that we just talked about? I can certainly address any questions that you have on that. It's just curious to me, and I'll ask Weatherford's counsel this also, but it seems like this line of cases all goes back to this Supreme Court case from 1884, ex parte Schreiber, which said that in that case I believe the tortfeasor had passed away and the Court held that you couldn't get punitive damages from the estate of the tortfeasor. And somehow or another, that case has been relied upon by a lot of lower courts to hold that the rule applies not just to the tortfeasor, but also to the injured party. If the injured party dies, the estate of the injured party can't get punitive damages. And that, to me, just seems screwy. So do you agree? Is there some reason why the common law recognizes that the estate of an injured party cannot collect against a tortfeasor that's still alive and kicking? You know, I can't really address the development or the history of how the case law proceeded, but I know that many courts have decided cases in which remedial damages have been honored and awarded to the estates of a complainant. So there's compensatory damages and damages for emotional distress, such as the ones in this case that survived, but punitive damages can no longer go to the effect of deterring the conduct in relation to this particular complainant. You're right, but the tortfeasors are still around to be deterred. It's just a different entity that's collecting the damages. You're not here to – it doesn't sound like you're prepared to really get into that today, but that's something that's bothered me about this case, because it doesn't seem that there's any rhyme or reason to why you would be barring an injured party from getting punitive damages. I can understand why you might perhaps say a tortfeasor that's passed away you shouldn't burden, maybe, wouldn't burden them, but it seems like a lot of these cases are just citing treatises but not ever giving any explanation for why the rule exists. Yes, I agree. It acknowledged existing case law and precedent, but I do note that this circuit has not directly addressed that question in regards to this law and to punitive damages under employment discrimination cases, so there's a possibility to explore that issue here. So the Department of Labor doesn't necessarily disagree that we could explore that issue here? I am in the position of supporting the ARB's decision and the ARB honored precedent in coming to its conclusion in the case below. So unless there is a subsequent decision that would overturn the precedent, then the Department of Labor doesn't have a position. Okay. If I may proceed, unless the court has any questions about the legal standard in this case, which is clearly set forth in the STAW statutory language and is discussed in the Secretary's brief, I would like to get right into the merits of A.R.'s STAW claim. We believe that substantial evidence supports the fact that A.R.'s engaged in protected activity. As Your Honor noted, the record supports that A.R.'s complained about being asked to drive outside of his job classification. His supervisor, Lee Hammons, testified that he had refused to drive. As the ALJ noted in his decision, citing patent note, which is an ARB decision, that refusal to drive in and of itself constitutes protected activity. In addition to the refusal to drive, there's testimony from the HR assistant manager, James Nicholson, that A.R.'s made a phone call to him on or about August 13th, setting forth his complaints. And then it's undisputed that he sent an email on September 20th also to Nicholson documenting his safety complaints. Second, it's undisputed that Weatherford took adverse action against A.R.'s, not only when it discharged him, but when it put him on a non-essential list shortly after he made these complaints, and then failed to recall him from his rotation at home, which subsequently led to his discharge. And Weatherford asserts that that was a layoff. Third, the record supports that A.R.'s was engaged, I'm sorry, that A.R.'s protected activity contributed to the adverse treatment here. Around the time that A.R.'s made his complaints, Crabb admitted that he stated at a meeting with employees, anyone who spoke with HR would be fired. Shortly after that meeting, Crabb and Hammonds had a meeting with Brian Gold, this is one of A.R.'s coworkers, and in that meeting, Crabb and Hammonds was inquiring about the complaints to HR and A.R.'s potential involvement. Gold testified in his deposition that both Crabb and Hammonds admitted to knowing that A.R. spoke with HR, and that they labeled him as a troublemaker. At the hearing, Crabb admitted that in a discussion with supervisors, A.R.'s was labeled as a complainer. Then Crabb and Hammonds put A.R.'s on a non-essential list that resulted in him not being called back from his rotation at home, and ultimately led to his discharge. During the time that he was at home, Weatherford was allegedly investigating his complaints, but there is no record or evidence of an investigation actually being conducted. Substantial evidence supports that the purported reason A.R.'s was included in the layoff was pretextual here. Hammonds alleged, and Weatherford's counsel stated earlier, that A.R.'s was a bad employee, but A.R.'s coworkers testified to the contrary. And the judge considered this and weighed the evidence and credited A.R.'s coworkers. The ARB affirmed this, and Weatherford has not provided any basis to overturn that credibility determination, or that substantial evidence doesn't support this finding. And so while Weatherford alleged that economic conditions were the reason for the layoff, the record supports that the layoff, after the layoff, Weatherford still engaged in hiring new employees for the same position that A.R.'s occupied. And Crabb admitted that business subsequently picked up at the hearing. So the record supports that A.R.'s established his prima facie case, and next we turn to whether Weatherford failed to prove by clear and convincing evidence that it had taken the adverse action for non-discriminatory reasons. And we believe for all the reasons that the layoff was pretextual, A.R.'s economic layoff was also invalid. His argument that A.R.'s was a poor performer is just not borne out by the record. Weatherford did not present evidence of some objective factor or rating system that was used to determine who would be put on the non-essential list. It doesn't explain how that decision was made. In fact, there's testimony from Hammonds that they just looked at who did what, who was going to work, and who was not going to work, which is a very subjective determination. So as the ALJ stated in his decision, there's a clear distinction that the company had a legitimate reason for undergoing a RIFT does not by itself mean that its use of the RIFT to retaliate against the complainant, that it did not use the RIFT to retaliate against the complainant, and I believe that's the circumstances here. Next, going to the issues of collateral estoppel and res judicata, we believe that the ARB correctly concluded that collateral estoppel does not apply here because the district court dismissed his whistleblower complaint on procedural grounds due to lack of jurisdiction. So the issue was not actually litigated, and a final judgment on the decision was not rendered on the merits. Similarly, the dismissal of the FALSA retaliation claim does not preclude this case here because the FALSA claims involved overtime claims, whereas the STAW claim is based on safety complaints, so you're dealing with different facts and issues. In addition, the FALSA claim applied a different standard. It used the McDonnell-Douglas burden-shifting framework, and here it's clear that the STAW applies a contributing factor test. So as your Honor noted, in the district court case below, the layoff, the court did not make a finding that the layoff was valid as a matter of law, contrary to what opposing counsel would allude. We believe that Weatherford mischaracterizes the court's holding. The court concluded that Ayers failed to establish that the layoff was pretext. I'm sorry, I see that my time is up. Okay. Well, thank you, Ms. Wiles. Do we have rebuttal? Thank you, Your Honors. I want to first briefly touch on the punitive damages issues raised by Ayers, and then we'll move on to counsel. First, he mentions a Murphy and a Parchman case. They're fully distinguishable. The Murphy case, as Mr. Hume mentioned, is a bankruptcy case that involved truth in lending. Punitive damages, I don't believe, are at issue. In the Parchman case, it's specifically held that punitives do not survive the death of a plaintiff. So we believe that the Two Sixth Circuit case are directly in our favor. Punitive damages do not survive the death of a plaintiff, and the damages were properly reversed by the Administrative Review Board. Furthermore, on the merits, even if, for the sake of argument, punitive damages are appropriate, on the merits, they just simply don't support punitive damages in this case. I mean, the Administrative Law Judge admitted it was a very close case. The facts here show that there was a legitimate reduction of force that was included, and the District Court issued summary judgment. So the facts here just don't support that there's egregious bad faith or any type of case that would support punitive damages. The Administrative Law Judge here didn't address whether punitive damages would be available, assuming I think the ruling was that it's just not available or not available under the statute for award to an estate. Wasn't that the ruling of the Administrative Law Judge? I believe so. I believe he did look at the statute, and yes, I would agree. So suppose we've held that an estate could recover under this statute, we would need to remand it, wouldn't we, for the ALJ then to make a determination of whether the facts here warrant punitive damages? Yes, you're right. Okay, we couldn't just award punitive damages, I don't think. You'd have to send it back to have a hearing on that. Yes, yes, we'd have to have a full factual hearing as to whether or not... The ALJ did award $25,000 in punitive damages. It was the ARB that overturned it based on... Oh, okay, I'm sorry. I'm getting confused. Okay, so there was a hearing. ALJ found that the facts supported the award of punitive damages, assuming it's available under the statute. Then the ARB then reversed as a matter of law saying you can't get punitive damages as an estate. Okay, so we could reinstate, but you're arguing there's not substantial evidence to support punitive damages, even if they're available under the statute to an estate. No, no, they're just simply not here. There's no evidence of bad faith. There's no evidence that... Weatherford looked at his complaint and said, hey, we want to get rid of him because he submitted complaints to us, and we're going to put him in the reduction of force. Those facts just simply aren't here. The district court recognized that and issued summary judgment as to that. So we believe that this case does not support punitive damages. And the ARB did not rule on alternative grounds. In other words, it just said punitive damages are not available as a matter of law, but it didn't say, and even if they were available as a matter of law, we would overturn the ALJ's finding for the reasons that you just said. It didn't say that last part, correct? Yes, yes. It was simply, hey, here's the law. Maybe we would need to remand it to the ARB. If we did hold that the statute allowed punitive damages to an estate, maybe we would need to send it back to the ARB then to make a final determination. Yes, Your Honor, and I think that's where I confused the issues. Rather than the ALJ. Okay, I think that's all your time, so thank you. Thank you, Your Honor. Okay, I knew when I reserved only two minutes for rebuttal I probably should have reserved more. Let me start with the issue that you just were discussing, Your Honor. The issue of the sufficiency of the evidence to support the punitive damages award is not before this court. We have multiple cross petitions for review, but only the heirs estate petition for review of the punitive damage award, and the sole issue presented to this court before on that issue is the survival issue. Whether or not they wanted to preserve that issue, they would have had to take some form of pleading in order to preserve that issue. They haven't done so. Yes, Your Honor. That's our position, yes, Your Honor, because as Judge Mathis indicated, the ALJ clearly awarded the $25,000 in punitive damages. It was the ARB that reversed that decision. And before my time runs out, I do want to just address briefly Well, I'm sorry, I'll give you a little bit more time. I've got to make sure procedure on that. Did Weatherford appeal, though, the ALJ's finding on punitive damages to the ARB? They did. Yes. On both whether or not it's available under the statute for an estate, and also whether the evidence supports punitive damages, assuming I believe that's my current recollection. Okay, so they did preserve it on that appeal, but then you have a ruling by the ARB that doesn't get to that second issue. So you're saying even though the ARB didn't get to that second issue, they needed to appeal that second issue to us in order to keep it preserved. I'm not sure that's right. Well, I would say it's analogous to cross appeals in state court. Both parties can appeal an issue, but if you want to preserve an issue for further review, you have to cross appeal whatever you think the district or trial court did wrong. The other thing I do want to address with Judge Larson, we talked a little bit about estates being able to collect punitive damages. And I would just address the court to this law review article that I cited in my brief at page 31 of the second brief. It says, under the common law analysis, if the federal statute underlying a plaintiff's action under the Murphy test as remedial in nature, and neither the specific language of the statute nor its legislative history can be interpreted as evidence of congressional intent that a particular form of recovery under the act is penal, the claim in its entirety will survive plaintiff's death, including remedies such as liquidated or punitive damages. That's the William Booth law review article. And I think that goes to the issue of opposing counsel argued about the Parchman case recognized that claims for punitive damages don't survive. That's a mischaracterization of that holding. What it said is that claims made under penal statutes, okay, those under the Murphy... There were no punitive damages at issue in Parchman. Is that correct? No, I think because the remedy in Parchman allowed for $500 per claim. Right. Statutory. No, keep going. You go. $500 per claim, which was not necessarily economic loss. It was something beyond economic loss. And triple damages, okay. There's really, for the purpose of deciding whether a remedial statute, whether you use the term civil penalty, exemplary damages, liquidated damages, they're all under the same category. They're all basically part of the same thing. And it's not the use of the term. In other words, if the use of the term punitive damages means you can't get them, so be it. That might be the law. But it's not. What you have to do is determine whether the claim is a penal claim. If it's a penal claim, you don't get punitive damages because it's extinguished by the death. But if it's a remedial statute and punitive damages are part of the overall remedial scheme included in that statute, the fact that a claimant dies... Can you give me an example of a statute that would be overall penal? So what you're saying is the whole claim has to be penal, not just the punitive damages or the triple damages. Is there any claim that you can think of that fits in that category? So there's no compensatory piece of it. Well, I do believe that in the Murphy case, I don't have it in front of me. I do believe that in the case itself, they go through that history and discuss cases that were determined to be penal and those that were not. Okay. We'll go back and look at Murphy. Well, thank you very much. Thanks to all counsel. The case will be submitted and the clerk may call the last case today.